**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| VIACOM INTERNATIONAL INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Case No. 4:21-cv-02612 |
| | § | |
| PIXI UNIVERSAL, LLC D/B/A KEFI HTX, | § | |
| and SANJU CHAND, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Viacom International Inc. ("Viacom") states the following for its Complaint

against Defendants Pixi Universal, LLC d/b/a Kefi HTX and Sanju Chand (collectively, "Pixi").

## SUMMARY OF THE ACTION

1.      Viacom brings this action to stop Pixi from misusing Viacom's SpongeBob

SquarePants intellectual property to deceive parents and their children into believing that Pixi's

"The Rusty Krab" restaurant and bar is affiliated with Viacom or its trusted Nickelodeon brand.

2.      The "SpongeBob SquarePants" animated television series has been airing on

Viacom's Nickelodeon family of television programming services for more than twenty years.

3.      For decades, the SpongeBob SquarePants entertainment property has been

immensely popular among both children and adults, with the franchise spanning hundreds of

television episodes, three feature films, a Tony® Award winning Broadway musical, a comic

book series, video games, theme park rides, original music, and various merchandise.

  

4.      The franchise's main character, SpongeBob SquarePants, famously works as a fry cook for the Krusty Krab, a fictional restaurant known for its Krabby Patties.

 

5.      The Krusty Krab is so central to the SpongeBob SquarePants franchise that, like SpongeBob SquarePants himself, it has become a household name, with consumers instantly recognizing the name and associating it with Viacom and Nickelodeon.

6.      Viacom owns federal trademark registrations and common law rights for numerous SpongeBob SquarePants-related marks, including KRUSTY KRAB, KRABBY PATTIES, and SPONGEBOB SQUAREPANTS as well as common law rights for its characters' names and other elements from the series (collectively, the "SpongeBob Marks"), as well as over 400 federal copyright registrations for SpongeBob SquarePants-related works (the "Works").

2

7.     Despite Viacom's unassailable rights, and in a bad-faith attempt to capitalize on the success of the SpongeBob SquarePants franchise, Pixi has opened a restaurant and bar called "The Rusty Krab" in downtown Houston (the "Infringing Restaurant"), which knocks off the SpongeBob Marks and infringes Viacom's copyrights in the Works by using names, images, characters, and recreations of famous SpongeBob scenes throughout the restaurant and on the menu and marketing materials.

  

8.     Pixi even registered and is using the domain names <RustyKrabExperience.com> and <TheRustyKrabExperience.com> (the "Infringing Domains") to advertise its so-called "Rusty Krab Experience", which Pixi advertises as "Houston's VERY FIRST Spongebob Squarepants Inspired Pop Up Restaurant and Bar!"

9.     Like the SpongeBob SquarePants franchise itself, Pixi's Infringing Restaurant and Infringing Domains and related websites are targeted primarily at children, with Pixi's website stating: "Are you a True SpongeBob Fan? Don't miss out on The Big Sponge and his friends at The Rusty Krab." Similarly, Pixi's Instagram page features photos of children and notes that the Infringing Restaurant is "Kid friendly" in nearly every post.

 **Rusty Krab - Sponge Bob Inspired Pop Up Bar** is in Houston, Texas.
June 22 · 

Spongebob is waiting!😆 Don't forget to get your tickets for the summer! Rusty Krab is here until August 1st!🦀

We are extending the Rusty Krab experience through August 1st! Link in our bio to purchase tickets!
https://www.therustykrabexperience.com/
🕐Sunday through Thursday 4pm-10pm
Friday & Saturday 4pm-2am
📍711 Main St, Houston
🦀Kid friendly everyday until 10PM

 **Rusty Krab - Sponge Bob Inspired Pop Up Bar** is in Houston, Texas.
June 2 · 

Add us to your Summer list!🔥

We are extending the Rusty Krab experience through August 1st! Link in our bio to purchase tickets!
https://www.therustykrabexperience.com/
📍711 Main St, Houston
🦀Kid friendly everyday until 8:30pm









**kefihtx**
Houston, Texas

**kefihtx** Come take a ride under the sea!🔥

We are extending the Rusty Krab experience through August 1st! Link in our bio to purchase tickets! https://www.therustykrabexperience.com/
📍711 Main St. Houston
🦀Kid friendly everyday until 8:30pm

10w

**kefihtx** #spongebob #spongebobmemes #houstonfood #houstonfoodie #houston #stufftodohouston #htx #htxfun #houstonnights #houstonfamily #familyfun #popup #houstonpopup

215 likes
MAY 26

Add a comment...                    Post

4

10.     The Infringing Restaurant is also decidedly "adult," however, serving alcoholic beverages and at times staying open until 2:00 a.m.



11.     The Infringing Restaurant, which many consumers believe is operated by or affiliated with Viacom due to Pixi's conduct, has received numerous public complaints from concerned parents who, after paying high ticket prices believing they would get an authentic SpongeBob SquarePants experience, voiced disgust at the Infringing Restaurant's purportedly unsanitary conditions and unsafe food.

12.     To prevent further deception of children and their parents, as well as the harm to the SpongeBob SquarePants franchise resulting from consumer associations between Viacom and a reportedly unsanitary restaurant, Viacom wrote to Pixi on May 25, 2021, to demand that it cease its infringing activities. The very next day, Pixi posted on Instagram: "We are extending the Rusty

Krab experience through August 1st!" A few weeks later, Pixi announced an extension "through

2021," with tickets available for sale until at least January 2, 2022.

14.    Viacom therefore brings this action for trademark infringement and unfair

competition under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act") and

the common law of Texas; dilution under the Lanham Act and Texas Business & Commerce

Code § 16.103(b); unfair competition by misappropriation under Texas common law; copyright

infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* (the "Copyright Act");

and bad faith registration of domain name and cybersquatting under the Anticybersquatting

Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA").

14.    Among other relief, Viacom asks the Court to: (a) award Viacom $200,000 in

statutory damages for Pixi's bad-faith registration of the Infringing Domains; (b) award Viacom

additional statutory damages of $150,000 per infringed Work for Pixi's willful copyright

infringement; (c) award Viacom a reasonable royalty of 10% of all revenues earned by Pixi in

connection with the Infringing Restaurant, and to treble that award; (d) order Pixi to disgorge all

of its profits from its operation of the Infringing Restaurant, trebled; (e) award Viacom punitive

damages, attorneys' fees, and costs; and (f) permanently enjoin Pixi and everyone working in

concert with it from using the SpongeBob Marks in any way, or copying or displaying the Works

or any derivative work, without Viacom's prior, written consent.

## PARTIES

15.    Plaintiff Viacom International Inc., which owns and operates the Nickelodeon

family of television programming services, is a corporation organized and existing under the laws

of the State of Delaware, with its principal place of business at 1515 Broadway, New York, New

York 10036.

6

16.     On information and belief, Defendant Pixi Universal, LLC is a limited liability company organized and existing under the laws of the State of Texas, with its principal place of business at 2204 Signal Hill Drive, Pearland, Texas 77584.

17.     On information and belief, Defendant Sanju Chand is Defendant Pixi Universal, LLC's managing member, and is an individual citizen of Texas with an address of 2204 Signal Hill Drive, Pearland, Texas 77584.

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction over Viacom's federal claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. The Court has subject matter jurisdiction over Viacom's state law claims pursuant to 28 U.S.C. §§ 1338 and 1367.

19.     The Court has personal jurisdiction over Defendant Pixi Universal LLC because, on information and belief, the company and its relevant member(s): (a) are citizens of Texas and have their principal places of business in Texas; (b) transact and conduct business within Texas to such an extent that they are at home in the State; and (c) purposefully availed itself of the laws of Texas by targeting the conduct giving rise to Viacom's claims at the State.

20.     The Court has personal jurisdiction over Defendant Sanju Chand because, on information and belief, Chand: (a) is citizen of Texas; and (b) purposefully availed himself of the laws of Texas by targeting the conduct giving rise to Viacom's claims at the State.

21.     Venue is proper in proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), and (c)(2), as well as 1400(a), because, on information and belief, Defendants reside or may be found in this district, and because a substantial part of the events giving rise to Viacom's claims occurred in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.     Viacom and its SpongeBob SquarePants Franchise.**

22.     Viacom is a wholly owned subsidiary of ViacomCBS Inc. ("ViacomCBS"), a premier global media company that, through its subsidiaries, has for many years developed, created, and distributed entertainment content, services, and related branded products.

23.     ViacomCBS's entertainment services reach approximately 4.4 billion cumulative television subscribers in nearly 200 countries, with more than 300 locally programmed and operated television channels.

24.     Plaintiff Viacom owns and operates the world-renowned Nickelodeon family of television programming services.

25.     "SpongeBob SquarePants" is a popular Nickelodeon animated television show that premiered in 1999 and has reigned as the number one animated series on TV for the last 18 years. The series is also available on Viacom's Paramount+ streaming services ranking one of the service's most-watched titles and is licensed globally. "SpongeBob SquarePants" has become an extremely valuable media franchise, which includes several spin-off series, three feature films, a Tony® Award-winning Broadway musical, a comic book series, original music, video games, significant related merchandise, theme park rides and theme hotels.

26.     Viacom owns a family of trademarks relating to the SpongeBob SquarePants franchise (the "SpongeBob Marks"), and has devoted tremendous resources to the creation, development, and marketing of those marks.

27.      As a result of Viacom's efforts, the SpongeBob Marks have acquired distinction, recognition, and substantial goodwill in Texas and throughout the United States.

28.     The series chronicles the nautical adventures of SpongeBob SquarePants, an

incurable optimist and earnest sea sponge, and takes place in the fictional, underwater city Bikini Bottom located in the Pacific Ocean.  Some additional  characters include SpongeBob SquarePants's best friend Patrick Star, Squidward Tentacles, Sandy Cheeks, Mr. Krabs, Sheldon Plankton, Karen Plankton, Mrs. Puff, and Pearl.

29.     The Krusty Krab is a well-known fictional fast-food restaurant in the SpongeBob SquarePants universe. It has appeared in more than 250 episodes of the television series, beginning with the pilot episode, and also appeared in all three feature films and the Broadway musical.

30.     The SpongeBob SquarePants works at the Krusty Krab as a fry cook, making the restaurant's famous Krabby Patty burger. But he also performs many other duties, proclaiming once that his official title is "Vice Assistant General Manager in charge of certain things."



31.     The Krusty Krab also employs SpongeBob's neighbor, Squidward Tentacles. The restaurant is the setting of countless comical exchanges among the series' main characters, including SpongeBob, Squidward, and SpongeBob's best friend Patrick Star.



32.     When not working at the Krusty Krab, SpongeBob is often at home in his pineapple house with his pet snail Gary, or sleeping next to his giant foghorn alarm clock.





33.    Viacom has capitalized on the popularity of SpongeBob SquarePants and the

Krusty Krab for many years in connection with its consumer products and services available

globally. For example, Viacom brought SpongeBob SquarePants' Bikini Bottom to life at

11

Comic-Con International: San Diego in 2019, which included an immersive experience featuring The Krusty Krab.



34.     In addition, Viacom has sold or licensed SpongeBob SquarePants and Krusty Krab-branded playsets, aprons, cutting boards, cake decorations, aquarium ornaments, dog toys, magnet sets, cups, costumes, video games, books, and various headwear and apparel, examples of which appear below.



35.    Viacom has also capitalized on the popularity of Krabby Patties (and their secret formula) by licensing or selling Krabby Patties-branded merchandise, including various apparel, coffee mugs, backpacks, toys, and candy, examples of which are shown below:



36.     SpongeBob SquarePants merchandise is offered for sale through Viacom's various authorized licensees, at brick-and-mortar retail stores, Viacom's official SpongeBob SquarePants e-commerce store at www.SpongeBobShop.com, and its Nickelodeon-branded store on Amazon.com and other retail platforms.

37.     Viacom has a strict policy against licensing the series properties or SpongeBob Marks including the KRUSTY KRAB Marks in connection with alcoholic beverage products.

38.     Based on Viacom's long standing and extensive use, the public equates the series, SpongeBob SquarePants, the Krusty Krab, and Krabby Patties exclusively with Viacom.

39.     On September 9, 1997, Viacom applied to register the mark SPONGEBOB SQUAREPANTS with the USPTO in connection with "entertainment services in the nature of an animated television series." On June 6, 2000, the USPTO issued Reg. No. 2,355,702 to Viacom. That registration is now incontestable. The Certificate of Registration, as well as documents showing that the registration is valid, subsisting, and incontestable, are attached collectively as **Exhibit 1**.

40.     On June 7, 2001, Viacom applied to register the mark SPONGEBOB

SQUAREPANTS with the USPTO in connection with various footwear, apparel, and accessories. On September 24, 2002, the USPTO issued Reg. No. 2,624,278 to Viacom. That registration is now incontestable. The Certificate of Registration, as well as documents showing that the registration is valid, subsisting, and incontestable, are attached collectively as **Exhibit 2**.

41.     On June 1, 2017, Viacom applied to register the mark SPONGEBOB SQUAREPANTS with the USPTO in connection with entertainment services, including "live entertainment performances." On February 27, 2018, the USPTO issued Reg. No. 5,414,607 to Viacom. The Certificate of Registration, as well as documents showing that the registration is valid and subsisting, are attached collectively as **Exhibit 3**.

42.     On January 18, 2017, Viacom applied to register the mark KRUSTY KRAB with the USPTO in International Class 20. On December 11, 2018, the USPTO issued Reg. No. 5,625,065 to Viacom. The Certificate of Registration, as well as documents showing that the registration is valid and subsisting, are attached collectively as **Exhibit 4**.

43.     On January 18, 2017, Viacom applied to register the mark KRUSTY KRAB with the USPTO in International Class 41. On December 25, 2018, the USPTO issued Reg. No. 5,635,497 to Viacom. The Certificate of Registration, as well as documents showing that the registration is valid and subsisting, are attached collectively as **Exhibit 5**.

44.     On January 15, 2003, Viacom applied to register the mark KRABBY PATTIES with the USPTO in connection with various food-related products, including cakes, puddings, crackers, and bread sticks, among others. On November 2, 2004, the USPTO issued Reg. No. 2,900,693 to Viacom. That registration is now incontestable. The Certificate of Registration, as well as documents showing that the registration is valid, subsisting, and incontestable, are attached collectively as **Exhibit 6**.

45.     The foregoing registrations are collectively referred to as the "Trademark Registrations."

46.     The SpongeBob Marks are non-functional and distinctive as to the goods and services in connection with which Viacom uses them.

47.     Viacom has spent millions of dollars advertising, promoting, and marketing the SpongeBob Marks in connection with a variety of goods and services in the United States and globally.

48.     As a result of Viacom's efforts, the SpongeBob Marks are famous, and consumers have come to associate them exclusively with Viacom and the SpongeBob SquarePants franchise.

49.     The SpongeBob Marks have also attracted significant unsolicited media attention from national and local outlets. The marks have been mentioned in numerous articles published by *The New York Times*, *The Houston Chronicle*, *USA Today*, *The Wall Street Journal*, and *NPR*, among many others. Representative examples of unsolicited media attention are attached collectively as **Exhibit 7**.

50.     In addition to being a clear commercial success for decades, the SpongeBob SquarePants series has also been a critical success. The series is arguably Nickelodeon's most successful ever, winning five Emmy Awards and being nominated for nineteen more, while also winning thirteen straight Kids' Choice Awards for "Favorite Cartoon."  Based on its popularity, the series has launched several spin-off series.

51.     The SpongeBob feature films, meanwhile, collectively grossed more than $250 million in the United States box office, and more than $450 million worldwide.

52.     Viacom primarily targets its SpongeBob SquarePants franchise and SpongeBob

Marks towards children ages six and older, but given the franchise's tremendous success for more than twenty years, some of SpongeBob SquarePants' biggest fans are adults.

53.     As *USA Today* explained on SpongeBob SquarePants' twentieth anniversary: "The beloved Nickelodeon show premiered May 1, 1999, and quickly became a pop-culture institution that shaped a generation of humor and remains relevant even into its original viewers' adulthood. Although children's TV can be formative, few series have echoed the cultural footprint of 'SpongeBob' . . . ."

54.     Given Viacom's extensive use of the SpongeBob Marks in connection with a wide variety of trade channels, including live entertainment services and food and kitchen products, and the fact that the Krusty Krab is itself a famous fictional restaurant and Krabby Patties its most famous food item, it is within the zone of natural expansion of Viacom's business to use or license the SpongeBob Marks in connection with restaurant services.

55.     Indeed, Viacom and its affiliated companies have successfully licensed its "Bubba Gump Shrimp Company" property—from the film *Forrest Gump*—for more than twenty years in connection with dozens of restaurants, including two in the Houston metropolitan area.

56.     Viacom and its affiliated companies have also successfully licensed its "Cheers" property—from the eponymous television series—in connection with a pub in Boston.

**B.     Viacom's Copyrights.**

57.     Each episode of the SpongeBob SquarePants television series (collectively, the "Works") is a motion picture and an original work of authorship, embodying copyrightable subject matter and subject to the full protection of the copyright laws of the United States.

58.     To the extent necessary, all contractors who contributed to the Works have expressly agreed via signed written instruments that all their contributions to the Works are

deemed works made for hire by Viacom.

59.     All employees and agents of Viacom who contributed to the Works were operating fully within the scope of their employment with Viacom.

60.     Through operation of law and/or written instrument, Viacom is the author and sole and exclusive owner of all right, title, and interest in and to the copyrights in the Works.

61.     Viacom has complied with all requirements and formalities of the Copyright Act with respect to the Works.

62.     Viacom has obtained copyright registration certificates from the United States Copyright Office for each of the Works. Documents showing the registration of a representative sample of the Works are attached collectively as **Exhibit 8**.

**C.     Pixi's Bad Faith Infringement of Viacom's Intellectual Property.**

63.     On or about April 9, 2021, Pixi opened a SpongeBob SquarePants-themed "pop up" restaurant and bar in Houston called The Rusty Krab (the "Infringing Restaurant").

64.     In creating and marketing the Infringing Restaurant, Pixi copied countless copyrighted materials from the SpongeBob SquarePants franchise, from the menu, to the character names and likenesses and live characters, to the recreations of well-known places in the SpongeBob SquarePants universe. Pixi even broadcasts and exhibits the Works on televisions set up throughout the Infringing Restaurant.









 

65.     Notably, the Infringing Restaurant's drink menu uses numerous well-known indicia of the SpongeBob SquarePants franchise—e.g., "Pineapple Under the Sea," "Bikini Bottom," "Secret Formula," and "I'm Ready," among many others—to sell alcohol, in clear violation of Viacom's licensing policy.

66.     Throughout the Infringing Restaurant and in associated marketing materials, Pixi uses marks that are substantially indistinguishable from, or confusingly similar to, the SpongeBob Marks, including, KRABBY PATTIES, SPONGEBOB, SPONGEBOB SQUAREPANTS, and RUSTY KRAB.

67.     On information and belief, Pixi registered the <TheRustyKrabExperience.com> domain name on April 22, 2021, but used a privacy service to conceal its identity. A copy of the Whois registration information for that domain name is attached as **Exhibit 9**.

68.     On information and belief, Pixi registered the <RustyKrabExperience.com> domain name on January 29, 2021, but used a privacy service to conceal its identity. A copy of the Whois registration information for that domain name is attached as **Exhibit 10**.

69.    The Infringing Domains are confusingly similar to the KRUSTY KRAB mark, because they contain a substantially identical version of that mark, along with generic terms like "the" and "experience" that consumers do not consider as indicators of source.

70.    At the time Pixi registered the Infringing Domains, the KRUSTY KRAB mark was distinctive and already famous among the general public in the United States and associated exclusively with Viacom—a fact which Pixi was well aware.

71.    The websites to which the Infringing Domains resolve (the "Infringing Websites") demonstrate that Pixi registered and is using the Infringing Domains in a bad faith attempt to target Viacom, the SpongeBob SquarePants franchise, and SpongeBob Marks including the KRUSTY KRAB mark, and to profit from the value of the SpongeBob SquarePants franchise including the KRUSTY KRAB mark. Images from the homepages of the Infringing Websites appear below:





Are you a True SpongeBob Fan? Don't miss out on The Big Sponge and his friends at The Rusty Krab - An over the top multi-room photo op experience and activities.

TICKETS ON SALE THROUGH 2021

72.     The Infringing Websites use identical or confusingly similar imitations of the SpongeBob Marks and copyrighted materials from the franchise.  Consumers can purchase tickets to visit the Infringing Restaurant through the Infringing Websites as well, as shown below:



73.     Through the Infringing Restaurant, Infringing Domains and Infringing Websites, Pixi is intentionally capitalizing on the popularity of the SpongeBob SquarePants franchise and Viacom's goodwill in the SpongeBob Marks, stating that its activities are targeted at "True SpongeBob Fan[s]."

74.     Pixi has never used the Infringing Domains for any bona fide noncommercial or fair use, whether of the SpongeBob Marks or otherwise. Instead, Pixi has, at all relevant times, used the Infringing Domains to divert consumers from Viacom's own SpongeBob SquarePants-branded e-commerce store and offerings featuring the SpongeBob Marks including the KRUSTY KRAB mark  to the Infringing Websites and Infringing Restaurant.

23

75.    In light of Viacom's clearly-established rights in the SpongeBob SquarePants franchise, the SpongeBob Marks including the KRUSTY KRAB mark and its federal registrations, at no time could Pixi have registered or used the Infringing Domains under the reasonable belief that such registration or use constituted fair use or was otherwise lawful.

76.    On May 25, 2021, Viacom contacted Pixi to demand that it cease all of its infringing activities, including in connection with the Infringing Restaurant, the Infringing Domains and Infringing Websites.

77.    The very next day, Pixi posted on Instagram: "We are extending the Rusty Krab experience through August 1st!"



78.     On June 7, 2021, Pixi's managing member Sanju Chand wrote to Viacom seeking "to partner up with Viacom" because "consumers do get deterred with the idea due to us not being affiliated directly with the SpongeBob Squarepants brand." Viacom declined Mr. Chand's invitation to "partner up" and instead reiterated its demand that the company cease its infringing activities.

79.     A few days later, Pixi announced that the Infringing Restaurant would extend its operating hours to 10:00 p.m. Sunday to Thursday, and to 2:00 a.m. on Friday and Saturday.

80.     A few weeks after that, Pixi announced that the Infringing Restaurant would now be "open through 2021," with the Infringing Websites selling tickets at least until January 2, 2022.

81.     In the meantime, concerned parents have posted harsh reviews of the Infringing Restaurant. One parent of a four year old child wrote: "The food was below average, and the restaurant felt dirty. Upon walking out, the bouncer they had at the front door had a girl sitting on his lap like he was in the club."

82.     Another parent complained that her nine and twelve-year-old girls were "verbally and then physically assaulted by a group of guests" that had been "over served" with alcohol and "very little oversight to control an event marketed and fully attended by kids."

83.     A Houston mother wrote that her "daughter was so disappointed" in the experience, several parents complained of "food poisoning," and others complained about disgusting conditions like "DEAD GNATS floating around inside" their drinks and "props" that "literally smelled like things were rotting in them."

84.      Pixi's misuse of Viacom's intellectual property to deceive parents and children into believing that the Infringing Restaurant is affiliated with, or authorized by, Viacom and the poor quality of Pixi's goods and services are tarnishing the famous series and SpongeBob Marks

and severely harming the goodwill Viacom has spent more than twenty years building.

85.     The foregoing harm is irreparable and is exacerbated by the fact that, on the Infringing Websites, in the Infringing Restaurant, and in associated marketing materials, Pixi has intentionally displayed and reproduced the SpongeBob Marks, the copyrighted images, characters, costumes, and character names, and derivative works thereof, from the SpongeBob SquarePants franchise (the "Infringing Materials").  Moreover, Pixi is using the Infringing Materials to promote the sale of alcoholic beverage products, which is contrary to Viacom's licensing practices for the series.

86.     On information and belief, Pixi created, displayed, and reproduced the Infringing Materials willfully, and in knowing disregard of Viacom's trademarks and copyrights, of which Pixi was on notice long before it began its infringing conduct.

87.     On information and belief, all of Pixi's conduct described herein has been and continues to be willful, wanton, and in bad faith, and none has been with the authorization or consent of Viacom.

88.     On information and belief, all of Pixi's unlawful conduct has been personally directed and overseen by Sanju Chand, who at all times relevant has been the sole moving force behind the company's infringing activities.

## FIRST CLAIM FOR RELIEF
### Federal Trademark Infringement
### (15 U.S.C. § 1114)

89.     Viacom repeats and incorporates by reference the allegations in the preceding paragraphs.

90.     Viacom is the record owner of the Trademark Registrations and has exclusive rights in the marks covered by those registrations (the "Registered Marks").

26

91.     Pixi's unauthorized use of confusingly similar imitations of the Registered Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Pixi's goods and services are put out by Viacom, or are associated or connected with Viacom, or have the sponsorship, endorsement, or approval of Viacom.

92.     Pixi's conduct has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Viacom's goodwill and reputation as symbolized by the Registered Marks, for which Viacom has no adequate remedy at law.

93.     Pixi's conduct demonstrates a willful, wanton, and malicious intent to trade on the goodwill associated with the Registered Marks to Viacom's great and irreparable harm.

94.     Viacom is thus entitled to permanent injunctive relief and to recover Pixi's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1114, 1116, and 1117.

## SECOND CLAIM FOR RELIEF
### Federal Unfair Competition
### (15 U.S.C. § 1125(a))

95.     Viacom repeats and incorporates by reference the allegations in the preceding paragraphs.

96.     Viacom has extensively and exclusively used the SpongeBob Marks in interstate commerce in the United States since at least as early as 1999.

97.     The SpongeBob Marks became widely-known by the general public and attained secondary meaning before Pixi began its infringing conduct.

98.     Viacom owns common law trademark rights in the SpongeBob Marks.

99.     Pixi has made false representations, false descriptions, and false designations of its

27

goods and services in connection with the Infringing Restaurant and the promotion thereof on the Infringing Websites and Infringing Materials.

100.    Pixi's unauthorized use of confusingly similar imitations of the SpongeBob Marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Pixi's goods and services are put out by Viacom, or are associated or connected with Viacom, or have the sponsorship, endorsement, or approval of Viacom.

101.    Pixi's conduct has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion and deception of members of the trade and public, and, additionally, injury to Viacom's goodwill and reputation as symbolized by the SpongeBob Marks, for which Viacom has no adequate remedy at law.

102.    Pixi's conduct demonstrates a willful, wanton, and malicious intent to trade on the goodwill associated with the SpongeBob Marks to Viacom's great and irreparable harm.

103.    Viacom is thus entitled to permanent injunctive relief and to recover Pixi's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(a), 1116, and 1117.

### THIRD CLAIM FOR RELIEF
### Federal Copyright Infringement
### (17 U.S.C. § 501)

104.    Viacom repeats and incorporates by reference the allegations in the preceding paragraphs.

105.    The Works are each original works of authorship, and Viacom is the sole and exclusive owner of all right, title, and interest in and to the copyrights in the Works.

106.    The Works, as well as images and character names from the Works, have been available in the media and on the Internet for years, and Defendants have long had access to the

Works.

107.     Images, videos, sets, signage, costumes, character designs, and character names appearing on the Infringing Websites, at the Infringing Restaurant, and in related marketing materials are identical or substantially similar to copyrightable material in the Works.

108.     Without authorization from Viacom, Pixi reproduced copyrightable material from the Works, displayed reproductions of copyrightable material from the Works, and created derivative works based on copyrightable material from the Works.

109.     Pixi's conduct has been willful and in knowing disregard of Viacom's rights.

110.     Viacom is thus entitled to injunctive relief and to recover Pixi's profits, actual damages, statutory damages, costs, and reasonable attorneys' fees under 17 U.S.C. §§ 502, 504(b), and 505.

**FOURTH CLAIM FOR RELIEF**
**Federal Bad Faith Registration of Domain Name and Cybersquatting**
**(15 U.S.C. § 1125(a))**

111.     Viacom repeats and incorporates by reference the allegations in the preceding paragraphs.

112.     Viacom owns registered and common-law trademark rights in the SpongeBob Marks including the KRUSTY KRAB mark.

113.     On information and belief, either of the Defendants is the registrant of the Infringing Domains, with the other being an agent of the registrant.

114.     On information and belief, Pixi uses the Infringing Domains to promote the Infringing Restaurant through the Infringing Websites.

115.     The Infringing Domains are substantially identical, or confusingly similar, to the SpongeBob Marks including the KRUSTY KRAB mark.

116. Pixi is using the Infringing Domains in a bad faith attempt to profit from them.

117. Pixi's conduct demonstrates a willful, wanton, and malicious intent to trade on and profit from the goodwill associated with Viacom's series and SpongeBob Marks including the KRUSTY KRAB mark.

118. Pixi's conduct is causing harm—and unless enjoined by the Court, will continue to cause harm—to Viacom for which Viacom has no adequate remedy at law.

119. Viacom is therefore entitled to injunctive relief and to recover Pixi's profits, statutory damages, monetary damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. § 1117(a).

## FIFTH CLAIM FOR RELIEF
### Federal Trademark Dilution
### (15 U.S.C. § 1125(c))

120. Viacom repeats and incorporates by reference the allegations in the preceding paragraph.

121. Viacom is the record owner of trademark registrations for the SpongeBob Marks including the KRUSTY KRAB marks and has exclusive rights in those marks.

122. The SpongeBob Marks including the KRUSTY KRAB marks are famous and have acquired distinctiveness and became famous among the general public in the United States long before Pixi began its infringing conduct.

123. Pixi's unauthorized use of confusingly similar imitations of the SpongeBob Marks including the KRUSTY KRAB marks is diluting and is likely to dilute the distinctiveness of those marks by eroding the public's exclusive identification of the marks with Viacom, tarnishing and degrading the positive associations and prestigious connotations of the marks, and otherwise lessening the capacity of the marks to identify and distinguish Viacom, the series and its goods

30

and services.

124.    Pixi's conduct has caused—and unless enjoined by the Court, will continue to cause—actual dilution and a likelihood of dilution of the SpongeBob Marks including the KRUSTY KRAB marks, for which Viacom has no adequate remedy at law.

125.    Pixi's conduct demonstrates a willful, wanton, and malicious intent to trade on the goodwill associated with the SpongeBob Marks including the KRUSTY KRAB marks or to cause dilution of those marks to Viacom's great and irreparable harm.

126.    Viacom is thus entitled to permanent injunctive relief and to recover Pixi's profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees under 15 U.S.C. §§ 1125(c), 1116, and 1117.

**SIXTH CLAIM FOR RELIEF**
**Texas Common Law Trademark Infringement and Unfair Competition**

127.    Viacom repeats and incorporates by reference the allegations in the preceding paragraphs.

128.    Viacom has extensively and exclusively used the SpongeBob Marks including the KRUSTY KRAB marks in interstate commerce in Texas and the United States since at least as early as 1999.

129.    The SpongeBob Marks became widely-known by the general public and attained distinctiveness and secondary meaning in Texas and the United States long before Pixi began its infringing conduct.

130.    Viacom owns common law trademark rights in the SpongeBob Marks including the KRUSTY KRAB marks.

131.    Pixi has made false representations, false descriptions, and false designations of its goods and services in connection with the Infringing Restaurant and Infringing Websites.

132.    Pixi's unauthorized use of confusingly similar imitations of the SpongeBob Marks including the KRUSTY KRAB marks is likely to cause confusion, deception, and mistake by creating the false and misleading impression that Pixi's goods and services are offered by Viacom, or are associated or connected with Viacom, or have the sponsorship, endorsement, or approval of Viacom.

133.    Pixi's conduct has caused—and unless enjoined by the Court, will continue to cause—a likelihood of confusion, deception, and dissatisfaction among members of the trade and public, and, additionally, injury to Viacom's goodwill and reputation as symbolized by the SpongeBob Marks including the KRUSTY KRAB marks and a loss of licensing opportunities, for which Viacom has no adequate remedy at law.

134.    Pixi's conduct demonstrates a willful, wanton, and malicious intent to trade on the goodwill associated with the SpongeBob Marks including the KRUSTY KRAB marks to Viacom's great and irreparable harm.

135.    Viacom is thus entitled to permanent injunctive relief under Texas common law.

### SEVENTH CLAIM FOR RELIEF
**Texas Trademark Dilution**
**(Tex. Bus. & C. Code § 16.103(b))**

136.    Viacom repeats and incorporates by reference the allegations in the preceding paragraphs.

137.    Viacom is the owner of exclusive trademark rights in the SpongeBob Marks including the KRUSTY KRAB marks.

138.    The SpongeBob Marks including the KRUSTY KRAB marks are famous and distinctive among the general public in Texas, and became famous and distinctive among the general public in Texas long before Pixi began its infringing conduct.

139.    Due to the similarities between the SpongeBob Marks including the KRUSTY KRAB marks and the marks uses by Pixi, there is an association between those marks in the minds of consumers in Texas.

140.    This association is likely to impair the distinctiveness of the SpongeBob Marks including the KRUSTY KRAB marks and harm the reputation of Viacom and its marks.

141.    Pixi's conduct is likely to cause and has caused dilution of the famous SpongeBob Marks including the KRUSTY KRAB marks, for which Viacom has no adequate remedy at law.

142.    Pixi's conduct demonstrates a willful, wanton, and malicious intent to trade on the goodwill associated with the SpongeBob Marks including the KRUSTY KRAB marks or to cause dilution of those marks to Viacom's great and irreparable harm.

143.    Viacom is thus entitled to permanent injunctive relief and to recover Pixi's profits, costs, and reasonable attorneys' fees under Section 16.013(b) of the Texas Business and Commerce Code.

## EIGHTH CLAIM FOR RELIEF
### Texas Common Law Unfair Competition by Misappropriation

144.    Viacom repeats and incorporates by reference the allegations in the preceding paragraphs.

145.    Viacom expended significant resources in creating the SpongeBob Marks including the KRUSTY KRAB marks,  by investing millions of dollars and thousands of employee hours.

146.    Viacom also expended significant resources in creating the SpongeBob SquarePants franchise, including by investing millions of dollars and thousands of employee hours.

147.    Pixi has used the SpongeBob Marks including the KRUSTY KRAB marks, the Infringing Domains, Infringing Websites and the Infringing Restaurant in competition with Viacom, taking advantage of the extensive time, labor, skill, and money Viacom invested in creating the SpongeBob Marks and SpongeBob SquarePants franchise, with Pixi bearing little or no expense itself.

148.    Pixi's conduct has caused commercial damage to Viacom and constitutes unfair competition by misappropriation in violation of Texas common law, for which Viacom has no adequate remedy at law.

149.    Viacom is thus entitled to permanent injunctive relief and to recover Pixi's profits, costs, and reasonable attorneys' fees under Texas common law.

### PRAYER FOR RELIEF

WHEREFORE, Viacom prays that:

1.    Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by through or under authority from Defendants, or in concert or participation with Defendants, and each of them, be immediately and permanently enjoined from:

      a.    using the SpongeBob Marks including the KRUSTY KRAB marks or any other copy, reproduction, colorable imitation, or simulation of the SpongeBob Marks in any domain name, on any website, or on or in connection with the marketing, promotion, advertising, sale, or offering for sale of any of goods and services;

      b.    passing off, palming off, or assisting in the passing off or palming off any goods or services as that of Viacom, or otherwise continuing any and all acts

of trademark infringement and unfair competition as alleged in this

Complaint;

c.   advertising, promoting, offering for sale, or selling goods or services bearing

confusingly similar imitations of the SpongeBob Marks including the

KRUSTY KRAB marks;

d.   registering or using any domain name containing confusingly similar

imitations of the SpongeBob Marks including the KRUSTY KRAB marks;

e.   using, reproducing, or displaying the Works or any copyrightable material

related thereto in any manner or in any medium, including on any website,

social media page, or advertisement; and

f.   aiding, assisting, or abetting any other person or entity in doing any act

prohibited by the foregoing subparagraphs, including, but not limited to,

selling, assigning, or transferring the Infringing Domains other than as

requested in Paragraph 4 below;

2.      Defendants be ordered to immediately cease offering for sale, marketing,

promoting, and selling, and to recall all goods and services sold under or bearing any confusingly

similar imitations of the SpongeBob Marks including the KRUSTY KRAB marks that are in

Defendants' possession, custody, or control, or have been shipped by Defendants or under their

authority, to any customer, including but not limited to, any wholesaler, distributor, retailer,

consignor, or marketer, and also to deliver to each such store or customer a copy of this Court's

order as it relates to said injunctive relief against Defendants;

3.      Defendants be ordered to deliver up for impoundment and for destruction, all

products, signs, advertising, sample books, promotional materials, or other materials in the

possession, custody, or control of Defendants that bear confusingly similar imitations of the SpongeBob Marks including the KRUSTY KRAB marks within ten days of entry of judgment;

4.      Defendants be ordered to take all reasonable steps to effectuate the transfer of the Infringing Domains, and any other domain names owned or controlled by Defendants or those acting in concert with them containing confusingly similar imitations of the SpongeBob Marks or KRUSTY KRAB marks, to Viacom within ten days of entry of judgment.

5.      Defendants be compelled to provide a full accounting to Viacom for sales made in connection with the Infringing Websites and Infringing Restaurant—including any and all revenues derived by Defendants, deductible expenses, and the detailed documentation supporting both—and remit to Viacom any and all profits;

6.      Viacom be awarded all damages caused by the acts forming the basis of this Complaint, including a reasonable royalty of no less than 10% of Defendants' sales;

7.      The Court treble the above profits and damages awards;

8.      Viacom be awarded statutory damages based on Defendants' willful copyright infringement in the amount of $150,000 per Work infringed;

9.      Viacom be awarded statutory damages based on Defendants' willful, bad faith domain name registration and cybersquatting, in the amount of $100,000 per infringing domain name, i.e., $200,000.

10.      Defendants be ordered to pay Viacom the costs of this action and Viacom's reasonable attorneys' fees;

11.      Defendants be ordered to pay Viacom, for purposes of deterrence, punitive damages in the amount of $50,000;

12.     Viacom be awarded prejudgment and post-judgment interest on all monetary awards;

13.     Defendants be held jointly and severally liable for all of the foregoing; and

14.     The Court order any other and further relief as it may deem just.

Dated: August 11, 2021                    Respectfully submitted,

                                          KILPATRICK TOWNSEND & STOCKTON LLP

                                          By: s/ *Cole B. Ramey*
                                              **Cole B. Ramey**
                                              Attorney-in-Charge
                                              State Bar No. 16494980
                                              S.D. of Texas Bar No. 27727
                                              cramey@kilpatricktownsend.com
                                              **Christin J. Jones**
                                              State Bar No. 24070017
                                              S.D. of Texas Bar No. 2052810
                                              cjones@kilpatricktownsend.com
                                              2001 Ross Avenue, Suite 4400
                                              Dallas, Texas 75201
                                              Phone: (214) 922-7148
                                              Facsimile: (214) 279-9277

                                              **Dennis R. Wilson** (to be admitted *pro hac vice*)
                                              dwilson@kilpatricktownsend.com
                                              1801 Century Park East, Suite 2300
                                              Los Angeles, CA 90067
                                              Phone: (310) 777-3735
                                              Facsimile: (310)-388-3125

                                              *Counsel for Plaintiff*